(No. 43799.-)

BENNIE WILLIAMS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(United States Steel Corporation, Appellee.)

*Opinion filed October 4, 1971.*

GOLDENHERSH, J., took no part.

HAROLD A. LIEBENSON, of Chicago, for appellant.

HACKBERT, ROOKS, PITTS, FULLAGAR and POUST, of Chicago, (DOUGLAS F. STEVENSON and DANIEL P. SOCHA, of counsel,) for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

In this workmen's compensation case, an arbitrator found that claimant, Bennie Williams, failed to prove that he sustained accidental injuries arising out of and in the course of his employment by U.S. Steel Corporation on July 24, 1967. After hearing additional evidence, the Industrial Commission affirmed, as did the circuit court of Cook County. This appeal followed. 43 Ill.2d R.302(a).

Claimant testified that at 5:30 A.M. on July 24, 1967, while employed as a "blocker", he was struck on the left knee by a rotating block from which he was removing coils of steel wire. He stated that he continued working until the end of his shift at 6:45 A.M. since he was unable to leave his machine. Claimant testified that at 6:40 A.M. he reported the injury to his substitute foreman, Richard Hund, who was "passing through", but that Hund made no response. Hund testified that he did not recall whether or not claimant had informed him of the injury or whether or not he had made out an accident report for claimant in July, 1967. Claimant stated that his left knee began to swell and give him pain after he arrived home from work

on the 24th, and that after work the next day he went to see Dr. Louis Scheman, an orthopedic surgeon.

Claimant testified further that he had suffered a similar injury to his left knee in July, 1965, and had then received heat treatments and an elastic bandage for his knee from the company doctor, Dr. Grundset.

Dr. Scheman testified that he examined claimant for the first time on July 25, 1967, and that his objective findings indicated "swelling of the left knee with fluid in the knee, pain and tenderness when the kneecap was pressed against the lower end of the femur, and crepitation or roughness between the kneecap and the lower end of the femur." Dr. Scheman also found atrophy of the quadriceps muscle in the left thigh, and a softening of the cartilage of the kneecap was revealed by X rays of the left knee. According to Dr. Scheman's notes from the July 25 examination, claimant told him that the injury to his knee occurred in 1965 and the doctor testified that he had no knowledge of the July, 1967, injury until March of 1968. In response to a hypothetical question posed by claimant's attorney, Dr. Scheman testified that in his opinion there was a direct causal connection between the injury on July 24, 1967, and the condition of claimant's left knee. On cross-examination, however, Dr. Scheman testified that the degenerated condition of the cartilage observed in the X ray preceded the initial examination by at least several weeks and the atrophy of the thigh could not have been the result of an accident occurring the day before the examination.

Claimant stated that following his appointment with Dr. Scheman, he returned to work and informed the personnel supervisor, John Kokun, of the injury and that he was going to have an operation as soon as there was an opening in the hospital. Supervisor Kokun testified that he did not recall a conversation with claimant on July 25, but that a conversation between them did occur on July 27 in which claimant stated that he was injured in 1965 and was

planning to have knee surgery in August, 1967. Kokun stated that he explained to claimant that the employer had no liability as over one year had elapsed since the injury and that his claim would be taken care of through Blue Cross—Blue Shield coverage. According to the supervisor, claimant was given applications for group insurance benefits and the July, 1967, injury was not mentioned at this time. Finally, Kokun stated that a routine foreman's accident report had never been submitted concerning claimant's July, 1967 injury.

On August 8, 1967, claimant filled out and signed a "Statement of Claim For Group Accident and Sickness Insurance" for the Equitable Life Insurance Company, stating the date of injury to be July 27, 1965. This form was received into evidence. The arbitrator denied recovery on May 17, 1968, and, as conceded in claimant's brief, "One could readily see where the Arbitrator made the finding he did on the evidence before him."

It is contended, however, that the additional testimony of a co-worker, Roosevelt Brown, who appeared before the Commission on June 9, 1969, conclusively confirms the occurrence of the July, 1967, injury to claimant. Brown testified that on July 24, 1967, he was also employed as a "blocker", working approximately six feet from claimant pulling wire off of a rotating block when one of two pins on the block struck claimant on the left knee, causing him to "hop" and limp for 10 or 15 minutes before returning to work. Brown further stated that the only time he talked with claimant about the accident was three weeks prior to the hearing before the Commission when claimant passed by Brown's home while taking his children home from school, and stopped when he saw Brown working in the yard.

The primary responsibility for judging the credibility of witnesses lies with the Commission. (Cebulski v. Industrial Com., 48 Ill.2d 289, 294.) The testimony of Brown, whose sudden emergence as an eyewitness is

explained to be the result of a chance meeting with claimant two years after the accident and three weeks prior to the Commission hearing, certainly does not compel reversal of the arbitrator's decision. The function of this court is limited to a determination whether the Commission's findings are against the manifest weight of the evidence. *(Zbilski v. Industrial Com., 48 Ill.2d 131, 134; Ketchum v. Industrial Com., 39 Ill.2d 312, 316; Gould v. Industrial Com., 40 Ill.2d 548; Shell Oil Co. v. Industrial Com., 38 Ill.2d 286.)* They clearly are not in this case.

The judgment of the circuit court of Cook County is accordingly affirmed. *Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.