WILLIAMS NATIONALEASE, LTD., Plaintiff-Appellant, v. KATHLEEN J. MOTTER, Defendant-Appellee.

Fourth District  No. 4—94—0784

Argued March 14, 1995.—Opinion filed March 31, 1995.

Marvin H. Gesell (argued), of Bloomington, for appellant.

Douglas J. Hundman (argued), of Dunn, Goebel, Ulbrich & Hundman, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

In the process of leasing trucks for use in its business, Motter Enterprises, Inc. (Motter Enterprises), furnished an "APPLICATION FOR CREDIT" to Williams Nationalease, Ltd. (Nationalease). This application contained the signature of Ronnie Motter and, under "WIFE'S NAME," the name of Kathleen Motter. It also listed the business name as Motter Enterprises and, under the title of "PRINCIPALS: OFFICERS OR PARTNERS," listed "Ron Motter." It then provided that "Ron Motter" was "WHO IS AUTHORIZED TO PURCHASE." The "APPROXIMATE MONTHLY PURCHASES ANTICIPATED" was "$2000.[00]-$4000.00." Minimum information as to trucks already owned by Motter Enterprises, as well as employment information relating to the "WIFE," was provided. Credit references were listed. The second page of the application was a "BLANKET SALES TAX EXEMPTION CERTIFICATE" dated June 3, 1992, and executed by "Ron Motter, President." The third page was the following:

> "MUST BE SIGNED BY OWNER OR DULY AUTHORIZED OFFICER IF A CORPORATION

| PRINT NAME: | Ron Motter | WITNESS: | Nancy L. Pierce |
|---|---|---|---|
| SIGNED: | Ron Motter | DATE: | 6-3-92 |
| TITLE: | President | | |
| DATE: | 6/3/92 | | |

IF CORPORATION, INDIVIDUALLY GUARANTEED BY:

| NAME: | Ron Motter | NAME: | Kathleen J. Motter |
|---|---|---|---|
| SIGN: | Ron Motter | SIGN: | Kathleen J. Motter |
| ADDRESS: | 4901 Apollo Dr. | ADDRESS: | 4901 Apollo Dr. |
| DATE: | 6/3/92 | DATE: | 6-3-92." |

On June 8, 1992, Ron Motter, as president of "Motter Enterprises DBA PCS Express," executed a four-page, single-spaced, small-print "VEHICLE LEASE AND SERVICE AGREEMENT," as well as two attached schedules. Both the agreement and the two schedules were executed for Nationalease. Schedule A listed leased vehicles, weight-load limits, monthly lease charges, and mileage rates per mile. Schedule B referred to the truck lease and service agreement, and it provided equipment specifications. Kathleen is not listed in the agreement or attached schedules.

Ron Motter died, and Motter Enterprises was delinquent in payments due Nationalease. Nationalease brought this action against Kathleen, contending she was a guarantor. The trial court found there was no guaranty contract, on the basis that there was no meeting of the minds between Nationalease and Kathleen.

We find the initial application for credit was not a guaranty agreement for the subsequent lease agreements. The terms of the lease agreement were not known at the time the application was made. A guaranty, like all contracts, must have definite terms and, until the lease agreement was prepared and executed, there could be no determination as to what was being guaranteed.

■ In order for an agreement to be binding, the agreement must be definite and contain its terms and requirements. (17A Am. Jur. 2d *Contracts* § 192 (1991); *Snead & Co. Iron Works v. Merchants' Loan & Trust Co.* (1907), 225 Ill. 442, 80 N.E. 237.) A guaranty is an agreement by one or more parties to answer to another for the debt or obligation of a third party. (38 C.J.S. *Guaranty* § 1 (1943).) In "order to constitute a contract of guaranty the minds of the parties must meet in the same sense on the same proposition, or, as generally stated, there must be mutual assent to the terms of the guaranty." 38 C.J.S. *Guaranty* § 9 (1943).

■ General rules of construction apply in interpreting terms and conditions of contracts guaranteeing payments of rent under a lease or guaranteeing performance of other terms of a lease. (38 C.J.S. *Guaranty* § 50 (1943); 20 Ill. L. & Prac. *Guaranty* § 35 (1992).) A guaranty may contain various limits. (20 Ill. L. & Prac. *Guaranty* § 38 (1992).) Any material change in the obligation subject to the guaranty operates to discharge the guarantor. 20 Ill. L. & Prac. *Guaranty* § 51 (1992).

■ We conclude that a guaranty necessarily requires a meeting of the minds and, for there to be such an understanding, the guarantor must know the terms of the obligation which is the subject of the guaranty.

■ In the present case, the terms of the lease obligations between Nationalease and Motter Enterprises were not in existence when Kathleen signed her name to the application for credit. Thus, there could not be a meeting of the minds at the time Kathleen signed the application.

We find the burden on businesses such as Nationalease created by this decision is hardly significant. In most cases, the guaranty is by a separate written instrument which sets forth the specific terms guaranteed.

Motter Enterprises argues Kathleen's statement in an affidavit filed with the court that states she "signed the Application for Credit as guarantor" is a judicial admission of her liability for the lease obligation. A judicial admission is a statement made during a judicial proceeding or contained in a document filed with the court. (See *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12, 415 N.E.2d 599, 608; *Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 480, 232 N.E.2d 120, 122; 18 Ill. L. & Prac. *Evidence* § 136 (1956 and Supp. 1994).) Judicial admissions are binding upon a party and may not be contradicted, whereas an evidentiary admission may be controverted or explained. (*International Harvester Co. v. Industrial Comm'n* (1988), 169 Ill. App. 3d 809, 814, 523 N.E.2d 1303, 1305-06.) For a statement to constitute a judicial admission, it must be clear, unequivocal, and uniquely within the party's personal knowledge. The statement must also be an intentional statement which relates to concrete facts and not an inference or unclear summary. (*Poelker v. Warrensburg-Latham Community Unit School District No. 11* (1993), 251 Ill. App. 3d 270, 286, 621 N.E.2d 940, 952.) The statement in Kathleen's affidavit could well be viewed as a simple admission that she signed the application for credit rather than an admission of a guarantee of the lease payments. In the context of this case, her statement was not a clear and unequivocal admission of a guarantee of the lease payments. The judgment of the trial court is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.